Delbert P. Hesler and Lillian Hesler v. Commissioner.
Hesler v. Commissioner
Docket No. 47818.
United States Tax Court
T.C. Memo 1954-176; 1954 Tax Ct. Memo LEXIS 71; 13 T.C.M. (CCH) 972; T.C.M. (RIA) 54282; October 18, 1954, Filed *71 Deductions: Casualty loss: Damage to residence. - Under the facts, held, loss sustained in damage to a private residence deductible as a casualty loss within the meaning of section 23(e)(3), Internal Revenue Code of 1939. O. T. Thomsen, Esq., Dierks Building, Kansas City, Mo., for the petitioners. Melvin A. Bruck, Esq., for the respondent. JOHNSON
Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $638.34 in petitioners' income tax for the year 1950. The only issue in dispute is whether loss sustained by petitioners in damage to the house owned and occupied by them as their residence was deductible as a casualty within the meaning of section 23(e)(3) of the Internal Revenue Code of 1939. Another adjustment in the deficiency notice relating to the country *72 club payment is not contested by petitioners. Findings of Fact Petitioners are husband and wife and during the year 1950 resided in Kansas City, Missouri, and they filed a joint income tax return for that year with the then collector of internal revenue for the sixth district of Missouri. Petitioner in the singular herein refers to Delbert P. Hesler. In May 1950, petitioners purchased as a home a two-story house with basement, located at 6844 Oak Terrace in the J. C. Nichols Addition, which is the elite residential section of Kansas City. It is a frame house with a rock concrete foundation and has brick veneer on the front of the lower story. It has four bedrooms, two baths, a recreation room and a garage in the basement. Petitioner is a licensed mechanical engineer and made a thorough inspection of the house before buying it, and found no cracks in it and determined it to be unusually sound and of good construction. The house was built in 1935. Oak Terrace is a north-south street. Petitioners' house is on the west side of the street, facing east. The general contour of the land there is rather hilly, sloping to the north and to the west. The slope is rather steep from the *73 front to the rear of the house; there is a difference of one floorlevel between the front and back of petitioners' house. The rear of the house is at basement level. On or about August 15, 1950, the damage in question occurred, when a section of pre-cast plaster molding about four feet long suddenly and without warning fell from the living room ceiling. Whereupon, an examination of the house revealed a severe and unusual crack in the floor and walls of the basement had just occurred. The crack was located about three feet from the east or front wall of the house. It extended clear across the floor of the basement and up the walls on both south and north sides to the ceiling. Prior to this there were no cracks in the basement or elsewhere. The molding fell and the crack occurred simultaneously in a matter of seconds. The location and nature of the cracks indicated a sudden movement downward and slightly outward in the fore part of the house. That part of the basement floor, three or four feet wide, and forward of the cleavage across the house was tilted up above the normal basement floor. The forward part of this basement floorstrip had sunk and tilted forward which tended to raise *74 the back edge upward. The crack in the side walls also indicated that the front part of the house had moved slightly forward, but this was the lesser movement. The main movement was definitely downward. At this time, there were no other cracks whatsoever in the basement of petitioners' house other than in the part that was forward of the cleavage. The rear part of the house, downhill from the crack, definitely remained in position. It was the forward part of the house that moved downward and angled slightly uphill. At approximately the same time of this occurrence, similar damage, identical in character, was sustained by two other houses which adjoin petitioners' property on the north; their damage appeared to be occasioned by the same cause as that affecting petitioners' house. All three houses, including the petitioners' house, are on the west side of Oak Terrace and all face east. The three houses all similarly affected are identified as 6844 Oak Terrace (Hesler); 6842 Oak Terrace (Richards) and 6840 Oak Terrace (Pettigrew). These three lots are approximately the same size, the slope of the lots from front to rear about the same and the three houses are very similar in construction. *75 The cracks in the three houses were on a straight north-south line. The damage to the Richards house (the middle one) was greater and more severe than that to the Hesler and Pettigrew houses. The Richards house suffered a recurrence of this happening in 1952, but the others did not. Shortly after the damage was sustained, on August 15, 1950, the owners of the three houses all employed the same firm, specializing in foundation work, a competent and experienced one, to examine their houses, ascertain the cause and make the needed and necessary repairs. Petitioners sustained a loss of $2,000 by reason of the damage done to their house in August, 1950, and in their income tax return for that year claimed deduction therefor in said amount as a casualty loss, which the Commissioner disallowed. Petitioners were not compensated for the loss by insurance or otherwise. From the records of the U.S. Department of Commerce Weather Bureau introduced in evidence as to precipitation in Kansas City, it appears that in the first six months of 1950, the year in which the damage occurred, there had been a substantial deficiency in rainfall and near drought conditions. This was followed by approximately *76 six weeks (July 1st to August 15th) of most excessive rainfall which immediately preceded the damage. Normal rainfall from January 1st to June 30th is 18.14 inches. In the first six months of 1950, rainfall totalled only 10.90 inches. In the following month of July 1950, 9.90 inches of rain fell. This was the wettest July in the local weather records dating back to 1889. [1] This excessive rate of rainfall in July continued to the date of the damage, i.e., 4.67 inches of rain fell in the first fifteen days of August 1950. Shortly after petitioners' and the two adjacent houses were damaged, a competent expert in matters of this kind made an exhaustive investigation as to the cause of the damage to the three houses. He made openings from 14 to 30 feet in depth from the surface down to the bed-rock underlying *77 the three houses and it was his opinion that the contour of the bed-rock caused subterranean water from a wide area to accumulate and flow under the three houses. He found that the condition above the bed-rock underlying the three houses was rendered unstable by excessive accumulations of subsoil moisture due to excessive rainfall at that time, and this caused the damage to all three houses. The Richards house was near the middle of this condition and hence suffered the greater damage. The basic cause of the damage to petitioners' house was due to the very excessive and unusual rainfall in that vicinity for the six weeks immediately preceding the inflicted damage. This caused water on the bed-rock underlying the three houses to accumulate and saturate the earth so as to cause an unstable condition beneath the houses and caused the earth to sink, which occasioned the cracks and damage to petitioners' and the other two houses. Opinion Was the damage to petitioners' house and the resulting loss therefrom deductible as a loss from "other casualty" within the meaning of section 23(e)(3), Internal Revenue Code of 1939? [2] We think that it was. See Harry Johnston Grant, 30 B.T.A. 1028. *78 In the recent case of Rosenberg v. Commissioner (C.A. 8), 198 Fed. (2d) 46, a number of cases are reviewed wherein the word "casualty" as here used is defined, and summarizing therefrom we think the definition of the word as there approved is "an event due to some sudden, unexpected or unusual cause", and furthermore, that it does not refer "to a progressive decay or corrosion occasioned without any unusual action by the elements." Under the facts here we think the occurrence in question meets the test of both the affirmative and negative requirements there prescribed. That the incident here, resulting in the damage, was unusual and occurred suddenly and unexpectedly there can be no doubt. The first warning of its occurrence was when four *79 feet of the plaster molding fell from the ceiling of the living room, and almost immediately the long, large crack developed in the floor and walls of the basement. The suddenness of its occurrence and the similar damage and simultaneous happening to the Richards and Pettigrew houses refutes the suggestion that its cause might have been due to progressive decay or corrosion. Based upon the evidence and the record as a whole we have found as an ultimate fact that the basic cause of the damage to petitioners' house was due to "unusual action by the elements", that is, the very excessive and unusual rainfall in that vicinity for the six weeks immediately preceding the inflicted damage. This caused water on the bed-rock underlying the three houses to accumulate and saturate the earth so as to cause an unstable condition beneath the houses and caused the earth to sink, which occasioned the cracks and damage to petitioners' and the other two houses. A competent expert, after making a thorough examination, so testified and his testimony is corroborated by the physical facts. Two neighbors of petitioners, other than Richards and Pettigrew, testified on behalf of respondent to the effect *80 that no cracks occurred in their houses in August 1950, but that they did have cracks therein in prior and subsequent years. It does not appear that these cracks occurred suddenly, unexpectedly or from an unusual cause. Apparently they developed by degrees. One of these witnesses described the crack in her house as one which was first "a hair line crack" and it later "widened." Unlike the cracks in petitioners' house, it was not shown that these cracks were in any way connected with excessive rainfall, and we do not think this testimony tends to disprove petitioners' contention here. We are aware that it is not uncommon for cracks to occur in walls and foundations of houses, due to settling of the houses, and same would not ordinarily be construed as a casualty. Here the situation is different, since the evidence shows a sudden and unusual occurrence which was also shown to be directly connected with excessive and abnormal rainfall. Petitioners' claimed casualty loss deduction is sustained. Since petitioners do not contest another adjustment by respondent. Decision will be entered under Rule 50. Footnotes
1. July 1950 was the cloudiest and wettest July on the local weather record dating back to 1889, and equalled the coldest July of record. The greatest rainfall for any previous July was 9.78 inches in 1920. The greatest 24-hour rainfall ever to occur here in July was 5.62 inches on the 18th and 19th in 1896. [Quote from official U.S. Weather Bureau report for Kansas City.]↩
2. Sec. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. * * *↩